IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Kevin Alexander Gray; Glen Davis; Cassandra Fralix; Gerald Rudolph; Marjorie Brittain Hammock; Efia Nwangaza; and United Citizens Party of South Carolina,<br><br>Plaintiffs,<br><br>vs.<br><br>South Carolina State Election Commission; John H. Hudgens, Cynthia M. Bensch, Tracey C. Green, Pamella B. Pinson, and Thomas Waring, in their official capacities as chairman and members respectively of the South Carolina State Election Commission; and Henry McMaster, in his official capacity as Attorney General of the State of South Carolina,<br><br>Defendants. | C/A No.: 3:09-2126-JFA-CMC-DWS<br><br><br><br><br><br><br><br>**ORDER** |

PER CURIAM

This matter comes before the court on the plaintiffs' motion for permanent injunction. Plaintiffs seek to enjoin defendants from enforcing a voting practice plaintiffs contend must be precleared pursuant to the Voting Rights Act of 1965, 42 U.S.C. § 1973c (2006). As set forth herein, the court grants plaintiffs' motion and enjoins the defendants from enforcing the subject voting practice until the same is precleared.

I.      Factual and Procedural Background

The South Carolina Legislature passed Act Number 363 in 1988 (the "Act") (Ratification No. 382 or R382), which became law upon the Governor's signature on March 14, 1988. 1988 S.C. Acts 2693 (codified at S.C. Code Ann. § 7-11-15). On March 24, 1988, South Carolina's attorney general submitted the Act to the United States Attorney General for preclearance, which it received on May 31, 1988 (Defs.' Supp'l Disc. Ex. 2 at 41). As described in the preclearance submission:

> Section 1 of R382 adds §7-11-15 to further provide for qualifying as a candidate in the general election. In the past when a candidate sought nomination by petition, he did not have to file a statement of candidacy. Candidates by party primary or party convention, on the other hand, had to file a statement to offer for nomination. This amendment would place the same requirements on the petition candidate as the candidate for nomination by party or party convention.

(Id. at 42.) The text of the Act set forth qualifications for candidates to run in a general election, requiring all candidates to file a statement of intention of candidacy ("Statement of Intent"). Later amendments to S.C. Code Ann. § 7-11-15 fixed the filing period between noon on March sixteenth and noon on March thirtieth in an election year (the "filing period") and narrowed the section's application to candidates seeking nomination by political party primary or convention in order to comply with Cromer v. South Carolina, 917 F.2d 819 (4th Cir. 1990) (holding S.C. Code Ann. § 7-11-15 unconstitutional as it related to petition candidates).

The South Carolina State Election Commission (the "Election Commission") is the

state agency responsible for enforcing S.C. Code Ann. § 7-11-15. Between 1998 and April 16, 2008, the Election Commission interpreted the section to allow candidates to run as the candidate for one or more political parties in the general election so long as they filed a Statement of Intent for one political party during the filing period (the "Initial Policy"). (Joint Stip. ¶¶ 11, 18.) On April 16, 2008, the Election Commission voted to require candidates seeking party nominations to file a Statement of Intent during the filing period for <u>each</u> political party in which the candidate wished to run (the "Subsequent Policy"). (Id. ¶ 23.)

On August 12, 2009, the plaintiffs filed this action pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and on August 14, 2009, plaintiffs filed a motion for preliminary injunction to enjoin the defendants from implementing the Subsequent Policy. Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284(a), plaintiffs moved for and received a three-judge court to serve in the hearing and determination of this action [dkt. # 26]. The court held a brief status conference shortly after this action commenced where the parties indicated that there did not appear to be any material facts in dispute. In addition, and at the court's suggestion, the parties agreed to dispense with a hearing on the request for a preliminary injunction and proceed directly to a hearing on the merits. The parties stipulated to the facts they viewed as material and offered oral argument at a hearing held on November 18, 2009. The stipulated facts and the argument to the court at the November 18 hearing proved insufficient to resolve the issue before the court, necessitating the court's request of

additional targeted discovery [dkt. # 47], which it received on February 16, 2010 [dkt. # 50, dkt. # 51].

II. Discussion

Section 5 of the Voting Rights Act of 1965 requires covered jurisdictions, including South Carolina, to submit for the approval of the federal government "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964." 42 U.S.C. § 1973c(a) (2006). The required approval, or preclearance, may be obtained through filing a declaratory judgment action initiated in the United States District Court for the District of Columbia or by way of a submission to the United States Attorney General. Id. If the Attorney General approves the change, or fails to register an objection to the change within sixty days, the change is precleared. Id.

In order to resolve "whether an election practice constitutes a 'change' as that term is defined in [United States Supreme Court] § 5 precedents, [a district court must] compare the practice with the covered jurisdiction's 'baseline.'" Riley v. Kennedy, __U.S.__, 128 S. Ct. 1970, 1982 (2008). The "baseline" is "the most recent practice that was both precleared and 'in force or effect'—or, absent any changes since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date." Id. The procedure "in force or effect" on a particular date "must be taken to mean the procedure that would have been followed if the election had been held on that date." Perkins v. Matthews, 400 U.S. 379, 394 (1971).

4

Plaintiffs assert that the Election Commission's April 16, 2008 vote to implement the Subsequent Policy effects a change for the purposes of Section 5 and requires preclearance. As an initial matter, the court finds that requiring multiple Statements of Intent where a single filing sufficed before implicates Section 5 concerns. See, e.g., Allen v. State Bd. of Elections, 393 U.S. 544, 568 (indicating that even small changes, such as a change from paper ballots to voting machines, require preclearance); Perkins v. Matthews, 400 U.S. 379, 387 (1971) (requiring preclearance for changes in polling locations). However, a determination that a shift in policy occurred does not end the inquiry. In order to effect a change for the purposes of Section 5, the implementation of the Subsequent Policy must result in an election practice that differs from the baseline.

Section 7-11-15 was precleared by the United States Attorney General on May 24, 1988. The Election Commission, at its first opportunity to enforce the section in 1998, required Dr. Peter J. Ashy to file only a single Statement of Intent, allowing subsequent Statements of Intent to relate back to the initial, timely, filing. [dkt. # 50, 9.] While no clear statement of Election Commission policy relating to Statements of Intent issued between the date of preclearance and 1998, Perkins requires this court to determine the "procedure that would have been followed if the election had been held" on the baseline date. 400 U.S. 379, 394. The court finds that on May 24, 1988, the day the Attorney General precleared S.C. Code Ann. § 7-11-15, the Election Commission would have enforced the section as it did when it first had the opportunity in 1998, and allowed the relation back of multiple

Statements of Intent where a candidate files at least one Statement of Intent during the filing period. Accordingly, the relevant baseline for comparison purposes is May 24, 1988, the day the then-recently-enacted S.C. Code Ann. § 7-11-15 received preclearance. The court finds that the Election Commission's April 16, 2008 vote to create and implement the Subsequent Policy effected a change for the purposes of Section 5, a change that did not receive preclearance from the Attorney General, nor from the United States District Court for the District of Columbia.

III.  Conclusion

As "[n]o new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance," the defendants may not enforce the Subsequent Policy until they have sought and obtained preclearance of this change. Lopez v. Monterey County, 519 U.S. 9, 20 (1996). Accordingly, the defendants are hereby enjoined from requiring submission of multiple Statements of Intent where a candidate timely files a single Statement of Intent and seeks to run as a candidate on multiple party tickets.

IT IS SO ORDERED.                    FOR THE COURT

*Joseph F. Anderson, Jr.*

March 1, 2010                        Joseph F. Anderson, Jr.
Columbia, South Carolina             United States District Judge